**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

XIA LI,

                    Petitioner,

          v.

WARDEN OF ADELANTO ICE
PROCESSING CENTER, ET AL.,

                    Respondents.

Case No. 5:26-cv-02704-AYP

**ORDER GRANTING PETITION
AND ISSUING A WRIT FOR
HABEAS CORPUS**

### I.    SUMMARY

Petitioner, Xia Li, is a native and citizen of the People's Republic of China who is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, California. (Dkt. No. 1.) Petitioner entered the United States without inspection on or about July 10, 2024. *Id.* at 6.

On May 19, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, arguing Respondents detained her without notice and a

hearing prior to re-detention thereby violating her due process rights. She seeks an order requiring Respondents to release her from immigration detention or to provide an immigration bond hearing. (Dkt. No. 1.)

In their Answer, Respondents state, "Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*," and "to the extent Petitioner would be entitled to any remedy via the Habeas Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Dkt. No. 7 at 2.) Respondents did not present opposition to Petitioner's due process claim. *Id*.

In light of Respondents' position, the Court finds that Petitioner has demonstrated that the Government violated her right to due process by re-detaining her without notice and an opportunity to be heard. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain her.

## II.    FACTUAL BACKGROUND

Petitioner is citizen of China. (Dkt. No. 1 at 3.) She entered the United States on July 10, 2024, and was apprehended by Immigration and Customs Enforcement ("ICE"). *Id*. at 6. On July 11, 2024, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), charging her with removability under the Immigration and Nationality Act ("INA") section 212(a)(6)(A)(i) as an alien present without admission or parole, and placing Petitioner in full removal proceedings before an Immigration Judge ("IJ"). *Id*.

at 6. Also on July 11, 2026, ICE released Petitioner from custody on her own recognizance ("OREC") pursuant to section 236 of the INA. *Id*.

Following her release, Petitioner filed an application for asylum which remains pending. *Id*. Since her release, Petitioner has made good-faith efforts to comply with all reporting requirements. She has worked to support herself, paid taxes and regularly attended church. *Id*. at 7.

On March 17, 2026, Petitioner was arrested by the Los Angeles County Sheriff's Department, Special Victims Bureau, for an alleged violation of California Penal Code section 273a(b) (a misdemeanor). She was released the same day. *Id*. On April 6, 2026, the Los Angeles County Department of Children and Family Services issued a Notice of Referral Closure, concluding its investigation into the allegations of physical abuse against Petitioner and determined that the allegations were deemed inconclusive with no case pending. *Id*. Then on May 15, 2026, the Los Angeles County District Attorney's Office issued a declination letter stating that it declines to file criminal charges against Petitioner based on the March 17, 2026, arrest. *Id*. Petitioner was re-detained by ICE on March 20, 2026. *Id*.

On May 19, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, seeking an order requiring Respondents to release her from immigration detention. *Id*. at 13. Petitioner argues Respondents detained her without notice and a hearing prior to re-detention thereby violating her due process rights. She seeks an order requiring Respondents to release her from immigration detention or to provide an immigration bond hearing. (Dkt. No. 1.)

In their Answer, Respondents state, "Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*," and "to the extent Petitioner would be entitled to any remedy via the Habeas

Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Dkt. No. 7 at 2.) Respondents did not present opposition to Petitioner's due process claim. *Id*. For the reasons set forth below, the Court **GRANTS** the habeas petition.

### III.   PROCEDURAL HISTORY

Petitioner filed the instant habeas petition on May 19, 2026. (Dkt. No. 1.) The Court, on May 20, 2026, entered the Notice of General Order 26-05 and Briefing Schedule, directing Respondents to show cause why the writ of habeas corpus should not be granted and thereby adopting the standard procedures and briefing schedule under the General Order. (Dkt. No. 5.) Respondents filed their Answer on May 27, 2026. (Dkt. No. 7.) Petitioner filed her Reply on May 27, 2026. (Dkt No. 9.) Thus, the matter is fully briefed.

On June 17, 2026, Petitioner consented to proceed before Magistrate Judge for all proceedings in this case. (Dkt. No. 10.) The action has been fully consented to according to the General Order 26-05 and will proceed before a magistrate judge. (Dkt. No. 12.)

### IV.   DISCUSSION

The Court now turns to the merits of Petitioners' claims. Petitioner and Respondents agree that Petitioner has been detained pursuant to 8 U.S.C. § 1226(a).

**A. Petitioner's Detention Violates Due Process.**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process

Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

When ICE released Petitioner from custody on an OREC after determining that she was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018).

Respondents' choice to not oppose Petitioner's due process claims in their Answer is in effect a concession that the Petition should be granted. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (noting that "failure to respond in an opposition brief to an argument put forward in an opening brief

constitutes waiver or abandonment in regard to the uncontested issue").

Regardless, even if Respondents had not conceded the issue, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in). *See also Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id*. at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v.*

6

*Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

### 1. *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey* at 408 U.S. at 482. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases). Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United

States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop...ties" in this country, "[her] constitutional status changes accordingly," and she "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after detaining Petitioner in July 2024, ICE released her on her own recognizance. (Dkt. No. 1 at 7.) Until she was re-detained in March 2026, Petitioner had spent nearly all of her year and a half in the United States released on the OREC. *Id*. Petitioner is entitled to at least those protections described above with respect to her protected liberty interest in remaining out of immigration custody.

### 2. *Procedural Protections*

#### a) **Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). While Petitioner has remained subject to an OREC, which is a form of conditional parole, following her release in July 2024, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles [her] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032

8

("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for about twenty (20) months before her re-detention. (Dkt. No. 1 at 6–7.) As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has lived in the United States, filed for asylum, worked to support herself, paid taxes, and regularly attended church in her community. *See id*. While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts, including the undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before her recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-

KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under § 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining her freedom from confinement.

### b) Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6

(C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on conditional parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since her release, Petitioner has not given any reason to think that the Government's initial determination was in error. The only incident on Petitioner's record, an arrest, did not amount to charges being filed. The single arrest, alone, did not establish that Petitioner posed a danger to the community or a flight risk sufficient to justify immediate re-detention without proper process. In fact, it underscores the importance of providing Petitioner notice and a meaningful opportunity to be heard before depriving her of the liberty interest.

Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### c) Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been

determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in her unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

## V.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, Xia Li's (A #: 226-112-831) immediate release, subject to conditions of supervision that existed prior to her detention on March  20, 2026, along with the return of her personal belongings, including all of her identification, work permits, and other documentation, and preventing her re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained; and (3) the parties shall file a joint

status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

Dated: July 6, 2026

_____

HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

13